Alvin M. Gomez, Esq., State Bar No. 137818
Stephen Noel Ilg, Esq., State Bar No. 275599
Frank Zeccola, Esq., State Bar No. 308875
**GOMEZ LAW GROUP**
2725 Jefferson Street, Suite 3
Carlsbad, California 92008
Telephone: (858) 552-0000
Facsimile: (760) 542-7761
Email: alvingomez@thegomezlawgroup.com

Attorney for Plaintiffs Reynaldo Gomez Acosta, Servando Avila Luciano, and Felix Nunez Duarte, and on behalf of all unnamed Plaintiffs similarly situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR CORTES ARRELLANO, AND ON BEHALF OF ALL UNAMED PLAINTIFFS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>XPO LOGISTICS PORT SERVICES, LLC; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.:  2:18-cv-08220-RGK-E<br><br>Related Case No. 2:18-cv-03736-RGK-E<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: September 27, 2021<br>Time: 9:00 a.m.<br>Courtroom: 850<br>Hon. R. Gary Klausner |

GOMEZ LAW GROUP
A PROFESSIONAL CORPORATION
2725 JEFFERSON STREET, SUITE 3
CARLSBAD, CALIFORNIA 92008

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................................1

I.      INTRODUCTION ........................................................................................1

   A.   The Parties..........................................................................................1

   B.   The Lawsuit ........................................................................................2

II.     DESCRIPTION OF THE SETTLEMENT ..............................................4

   A.   The Class .............................................................................................4

   B.   Consideration ....................................................................................5

   C.   Mechanics of Settlement .................................................................5

   D.   PAGA Allocation ...............................................................................6

   E.   Service Enhancement Award, Attorneys' Fees/Costs ..................6

   F.   Allocation of Settlement Payments Per Class Member...............6

   G.   Release of Claims ..............................................................................7

   H.   Proposed Notice to the Class ..........................................................7

   I.   Final Settlement Approval ..............................................................8

   J.   CAFA Notice ......................................................................................8

III.    THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARY APPROVAL .......................................................................9

   A.   The Court's Role In Preliminary Approval Of A Class Action Settlement............9

   B.   All Factors Support Preliminary Approval ................................10

      1.   Settlement is the Product of Informed, Non-collusive Negotiations ...............10

      2.   The Settlement Has No "Obvious Deficiencies" and Falls Well Within the Range for Approval ...............11

      3.   The Settlement Does Not Improperly Grant Preferential Treatment to Class Representatives or Segments Of The Class....................14

      3.   The Stage Of The Proceedings Are Sufficiently Advanced To Permit Preliminary Approval Of The Settlement ...............15

IV.   THE CLASS NOTICE IS APPROPRIATE ................................................17

V.    CONCLUSION ...................................................................................17

i

*Arrellano v. XPO*
Motion for Preliminary Approval

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GOMEZ LAW GROUP
A PROFESSIONAL CORPORATION
2725 JEFFERSON STREET, SUITE 3
CARLSBAD, CALIFORNIA 92008

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3    *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) ......................9

4    *Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. January
5        27, 2007)........................................................................................... 11, 15

6    *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ...............11

7    *In re Wash. Public Power Supply System Sec. Litig.*, 720 F. Supp. 1379,
8        1392 (D. Ariz. 1989)..........................................................................11

9    *Int'l Bhd. of Teamsters, Loc. 2785 v. Fed. Motor Carrier Safety Admin.*,
10        986 F.3d 841, 858 (9th Cir. 2021.) .......................................................13

11    *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988)....................9

12    *Louie v. Kaiser Found. Health Plan, Inc.*, 2008 U.S. Dist. LEXIS 78314
13        (S.D. Cal. 2008) ..................................................................................9

14    *Louie v. Kaiser Foundation Health Plan, Inc.*, 2008 WL 4473183, *7
15        (S.D.Cal. Oct. 06, 2008) .....................................................................15

16

**Statutes**

17    28 U.S.C. § 1715 ("CAFA").......................................................................... 8

18    Fed. R. Civ. P. 23 .........................................................................................9

19

**Treatises**

20    2 H. Newberg & A. Conte, Newberg on Class Actions (3d ed. 1992) at
21        §11.41, p.11-87 .................................................................................9

22    3B J. Moore, Moore's Federal Practice §§23.80 - 23.85 (2003)................9

23    Manual for Complex Litigation, Second §30.44 (1993)......................9, 10

24

25

26

27

28

GOMEZ LAW GROUP
A PROFESSIONAL CORPORATION
2725 JEFFERSON STREET, SUITE 3
CARLSBAD, CA 92008

GOMEZ LAW GROUP
A PROFESSIONAL CORPORATION
2725 JEFFERSON STREET, SUITE 3
CARLSBAD, CALIFORNIA 92008

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

Plaintiffs Reynaldo Acosta, Felix Nunez Duarte, and Servando Avila Luciano, on behalf of themselves and other Class Members, and Plaintiffs Edgardo Villatoro, Manuel De Jesus Martinez, and Gerard Daniels in consolidated case 2:19-CV-09199 (hereinafter "Plaintiffs") respectfully seek the Court's approval of the instant Motion for Preliminary Approval of the Class Action Settlement with Defendants XPO Logistics Port Services, LLC (formerly XPO Port Services Inc.) and XPO Logistics Inc. ("XPO")[1], excluding Osman R. Garcia, Luis Humberto Montalvo, Mariano A. Saravia, Armando Henriquez, Luis Meza, and Vicente Renderos, who opted out of the settlement. The Parties request entry of an order: (1) preliminarily approving the proposed Class Action Settlement Agreement, (2) approving the form and method for providing class-wide notice, (3) directing that notice of the proposed settlement be given to the class, and (4) scheduling a final approval hearing to consider the request for final approval of the proposed settlement and for entry of judgment as well as Plaintiffs' request for attorneys' fees and expenses.

**A.    The Parties**

XPO is a trucking company that hires truck drivers to transport goods to and from the shipping ports for XPO's customers. Plaintiffs and Class Members are current or former Port of Los Angeles and Port of Long Beach truck drivers who were paid as independent contractors and

---

[1] The Settlement Agreement is attached as Exhibit 1 to the Declaration of Alvin M. Gomez, Esq. ("Gomez Decl.") Unless otherwise indicated, all exhibits referenced herein are attached to the Gomez Decl.

transported cargo from XPO's Port Services location[2] from March 28, 2013, through the earlier of December 31, 2021, or final approval of the Settlement Agreement (hereinafter, "S.A."). (Gomez Decl. at ¶ 3.)

### B.    The Lawsuit

This action was filed on March 22, 2017, in Los Angeles Superior Court. XPO removed the case to this Court on September 21, 2018. (Dkt. 1.) The operative pleading is Plaintiffs' Fifth Amended Complaint. (Dkt. 129.) On September 16, 2020, the Court granted class certification as to 1. Misclassification of employees; 2. Unlawful deductions and reimbursements regarding fuel and insurance; 3. Unpaid minimum wages; 4. Waiting time penalties; 5.   Failure to pay all wages owed every pay period; 6. Meal and rest periods; 7. Itemized wage statements; 8. Unfair Competition; and 9. Private Attorney General Act. (Dkt. 101.) The Court denied class certification as to reimbursements regarding maintenance expenses. (Id.) Plaintiffs dismissed the minimum wage claim and certain of their penalties under PAGA. (Dkt. 152; Gomez Decl. ¶ 4.)

XPO filed an Answer to the Fifth Amended Complaint denying that Plaintiffs' causes of action have merit, denying any liability or wrongdoing, and denying that Plaintiffs are entitled to relief under any of the statutes cited in those causes of action. (Dkt. 130.) XPO maintains that it has complied with applicable law in all aspects. (Gomez Decl. ¶ 5.)

The case was set to go to trial on September 7, 2021. (Dkt. 121.) Plaintiffs filed 12 motions in limine and 2 *Daubert* motions, and XPO filed 10 motions in limine. (Dkts. 208-237.) The Parties exchanged and

_____

[2]  Plaintiffs Luciano and Acosta primarily worked for XPO Logistics Cartage Inc. but did provide services for XPO Logistics Port Services LLC.

GOMEZ LAW GROUP
A PROFESSIONAL CORPORATION
2725 JEFFERSON STREET, SUITE 3
CARLSBAD, CA 92008

1   filed Joint Exhibit and Witness Lists, and each Party separately filed
2   their Memoranda of Contentions of Fact and Law. (Dkts. 244-247.) The
3   Parties were preparing and had exchanged the Pretrial Conference
4   Order, as well as the remaining trial documents, when the case settled at
5   mediation on August 9, 2021. (Dkt. 251; Gomez Decl. ¶ 6.)

6       After both sides conducted sufficient discovery and investigation,
7   participated in two separate private mediations before the Hon. Jay
8   Gandhi (Ret.), a well-known and highly regarded wage and hour
9   mediator. As a result, the Parties have agreed to fully, finally, and forever
10  compromise and settle all claims asserted in the Action pursuant to the
11  Settlement Agreement.   To achieve a complete release, each party
12  resolves and settles all claims raised in the Action, or that could have
13  been raised based on the facts alleged in the Action, including all causes
14  of action and claims alleged in the case, whether asserted under
15  California Labor Code, the California's Unfair Competition Law ("UCL"),
16  the PAGA, the California Industrial Welfare Commission Wage Orders,
17  or other state law, plus all civil and statutory penalties arising from the
18  foregoing, including, but not limited to those under the California Labor
19  Code, or other state laws as set forth in the operative complaint. (Gomez
20  Decl. ¶ 7.)

21      The attorneys for the Plaintiff Class, Alvin M. Gomez, Stephen
22  Noel Ilg, and Frank J. Zeccola of the Gomez Law Group, P.C. ("Class
23  Counsel"), have conducted a thorough investigation into the facts of the
24  operative Complaint and have diligently pursued the investigation and
25  litigation of Plaintiffs' and Class Members' (as defined below) claims
26  against XPO.  The Parties exchanged discovery, including expert reports,
27  conducted more than a dozen depositions, and disclosed, both through
28  discovery and through informal mediation-related disclosures, company

GOMEZ LAW GROUP
A PROFESSIONAL CORPORATION
2725 JEFFERSON STREET, SUITE 3
CARLSBAD, CA 92008

GOMEZ LAW GROUP
A PROFESSIONAL CORPORATION
2725 JEFFERSON STREET, SUITE 3
CARLSBAD, CA 92008

1    and operational policies, documents, and data related to XPO's
2    payments to Plaintiffs and Class Members for services rendered under
3    the Independent Contractor Operating Agreements ("ICOC"), and its
4    engagement of Plaintiffs and members of the Class as owner-operators.
5    (Gomez Decl. ¶ 8.)

6        The Parties recognize that the issues in the Action are likely only to
7    be resolved through further extensive and costly proceedings; recognize
8    that further litigation will cause inconvenience, distraction, disruption,
9    delay, and expense disproportionate to the potential benefits of
10   litigation; and recognize the risk and uncertainty of the outcome
11   inherent in any litigation.  Based on their own independent investigation
12   and evaluation, Class Counsel and class representatives agree with
13   XPO's Counsel that the Settlement is fair, reasonable, and adequate, and
14   is in the best interests of the Class, in light of all known facts and
15   circumstances, including the risk of significant delay, and the defenses
16   asserted by XPO.  While XPO specifically denies all liability in the
17   Action, it has agreed to enter into this Settlement to avoid the cost and
18   business disruption associated with further defending the Action.
19   (Gomez Decl. ¶ 9.)

20   **II.    DESCRIPTION OF THE SETTLEMENT**
21       **A.    The Class**
22       The Class, as certified by this Court (Dkt. 101.), is defined as:
23   "All current and former drivers of Defendant XPO Port Services who
24   work or worked out of XPO's Port Services yard during the relevant time
25   period, from March 28, 2013 to the present, and (1) signed an
26   independent contractor agreement ("ICOC") with XPO Port Services in
27   California at any time from March 28, 2013 through the date of notice to
28   the class; (2) actually drove for XPO; and (3) were classified by XPO as

1
2
3
4

an independent contractor instead of an employee." (The class excludes individuals who performed services as "Second Seat Drivers" and any limited liability corporations or other corporate entities that signed the "ICOC".) (Dkt. 101.)[3]

5

### B.   Consideration

6
7
8
9
10
11
12
13
14

As consideration for this Settlement, Defendant has agreed to pay a Maximum Gross Settlement Amount of Nine Million, Five Hundred Thousand Dollars and Zero Cents ($9,500,000.00). This payment will settle all issues pending in the litigation, including Class Counsel's Attorneys' Fees, Expenses (including Administration Costs), the PAGA Penalty Payment, all Individual Settlement Allocations to Class Members and PAGA Members (including any employer and employee payroll taxes), and the Enhancement Payments to the Class Representatives.   The Settlement is not a claims-made settlement.  (S.A. § III(A).)

15

### C.   Mechanics of Settlement

16
17
18
19
20
21
22
23
24
25
26

Class Counsel will make and submit to the Settlement Administrator and XPO their final Payment Calculations no later than thirty (30) days after entry by the Court of the Final Approval Order. The Payment Calculations shall take into account available information regarding the length of time each claimant provided services under contract to XPO during the Release Period, and the amount of each claimant's pro rata share of the attorneys' fees and costs to be paid to Class Counsel.   Class counsel shall use a workweeks formula for workweeks in which Claiming Class Members drove a vehicle to provide services pursuant to the ICOC.  Class Counsel assume and accept all responsibility and liability associated with their Payment Calculations.

27
28

[3] The settlement excludes claims for drivers who previously had settled their claims in prior cases.

GOMEZ LAW GROUP
A PROFESSIONAL CORPORATION
2725 JEFFERSON STREET, SUITE 3
CARLSBAD, CA 92008

(S.A. § III(B)(1).)

### D.    PAGA Allocation

The Parties have agreed to allocate $20,000.00 for Plaintiffs' PAGA claims of which 75 percent ($15,000) shall be paid to the State of California. (S.A. § III(A)(4).)

### E.    Service Enhancement Award, Attorneys' Fees/Costs

Subject to Court approval, the Stipulation provides for the Plaintiffs to apply for a Service Enhancement Award of $10,000 to each Plaintiff. (S.A. § III(A)(1).) Subject to Court approval, Class Counsel shall be awarded a sum not to exceed thirty-three percent (33.33%) of the Maximum Gross Settlement Amount (or $3,166,350.00) for reasonable attorneys' fees. Class Counsel will also be allowed to apply separately for reimbursement of their actual litigation costs, or $135,000.00.  (S.A. § III(A)(2)-(3).)  XPO will not oppose a motion for approval of attorneys' fees, litigation expenses, and service enhancement awards consistent with the Settlement Agreement.

### F.    Allocation of Settlement Payments Per Class Member

The Settlement Payment is allocated by the Parties to compensate for the reimbursement of expenses (whether deducted from contractual payments to Plaintiffs or their affiliated entities or paid separately by Plaintiffs), wages, and interest. No representation has been made to the Plaintiffs, Class Members, or their attorneys by XPO regarding the taxability of any portion of the payments under this Agreement. Plaintiffs, Class Members, and Class Counsel are solely responsible for their own tax filing and payment obligations arising from this Agreement, except that the Settlement Administrator will provide Plaintiffs, Class Members, and Class Counsel with copies of IRS Forms 1099 for any payments the Class Settlement Fund makes to them under

GOMEZ LAW GROUP
A PROFESSIONAL CORPORATION
2725 JEFFERSON STREET, SUITE 3
CARLSBAD, CA 92008

this Agreement.  (S.A. § VII(G.))

### G.    Release of Claims

If the Court issues a Final Approval Order, Plaintiffs and Class Members will fully, completely, and finally release XPO and their employees and officers of any and all liability. Class Members who have not excluded themselves will release all claims that were plead or could have been plead based on the alleged facts. (S.A. § I(D).)

However, the Named Plaintiffs are agreeing to a broader release, a general release of all claims of all types. (S.A. § I(M).)

### H.    Proposed Notice to the Class

The Parties have agreed to and request that the Court appoint Phoenix Class Action Administration Solutions as Settlement Administrator for this Settlement.  (S.A. § I(T).) XPO will provide data to Phoenix which lists each Class Member's and PAGA Member's name, last known address, dates of engagement under an ICOC during the Settlement Class Period, Social Security Number, and data to determine the number of calendar weeks worked by the Class Member.  This data will be based on XPO's settlement statements or other available business records in a format acceptable to the Settlement Administrator.  (S.A. at Exhibit 1.)

The Settlement Administrator will prepare, print, and mail the Notice to the Class Members. The Notice will include, non-exclusively, information regarding the nature of the Action; a summary of the substance of the Settlement; the Class and PAGA Member definitions; the date for the final approval hearing; the formula used for the Individual Settlement Payments and Individual PAGA Payments; for the Class, disputing calendar weeks, and objecting to the Settlement.  The Notice will include the time period during which the Class Member

GOMEZ LAW GROUP
A PROFESSIONAL CORPORATION
2725 JEFFERSON STREET, SUITE 3
CARLSBAD, CA 92008

worked during the Settlement Class Period and/or a statement of the number of calendar weeks the Class Member worked as stated in XPO's records, as well as a blank W-9 form that must be completed to receive a settlement payment.  (Settlement Agreement at Exhibit 3.)[4] The costs of administration to be paid from the gross settlement fund to Phoenix Class Action Administration Solutions are currently estimated to be $9,500.00. (Gomez Decl. at ¶ 21.)

## I.    Final Settlement Approval

Not later than fourteen (14) calendar days before the Fairness Hearing, the Named Plaintiffs will submit a Motion for Final Approval of the Settlement Agreement.  The date of the Fairness Hearing will be set by the Court. (S.A. VI(B).)

## J.    CAFA Notice

Defendant has represented that, within 10 days of the filing of this Motion for Preliminary Approval of Class Action Settlement, Defendant will comply with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"). (S.A. at Exhibits 7-8.)

## K. *Cy Pres* Beneficiary

Upon occurrence of the Effective Date of the Settlement, the Settlement Administrator shall distribute settlement payments in accordance with Section III of the Agreement. To the extent checks from the second distribution are not cashed within ninety (90) days following the second distribution, these funds shall be deposited with Casa Cornelia Law Center as *cy pres* beneficiary.

---

[4] Complete details on settlement administration, including specific objection procedures, are detailed more fully in the Settlement Agreement.

GOMEZ LAW GROUP
A PROFESSIONAL CORPORATION
2725 JEFFERSON STREET, SUITE 3
CARLSBAD, CA 92008

GOMEZ LAW GROUP
A PROFESSIONAL CORPORATION
2725 JEFFERSON STREET, SUITE 3
CARLSBAD, CA 92008

III. **THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARY APPROVAL**

Preliminary approval is the first of three steps that comprise the approval procedure for the settlement of class actions. *See e.g. Louie v. Kaiser Found. Health Plan, Inc.*, 2008 U.S. Dist. LEXIS 78314 (S.D. Cal. 2008); Fed. R. Civ. P. 23(e)(1)(A); 2 H. Newberg & A. Conte, Newberg on Class Actions (3d ed. 1992) at §11.41, p.11-87. The second step is the dissemination of notice of the settlement to all class members. The third step is a final settlement approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented and class members may be heard regarding the settlement. *See* Manual for Complex Litigation, Second §30.44 (1993).

A. **The Court's Role In Preliminary Approval Of A Class Action Settlement**

The question presented on a motion for preliminary approval of a proposed class action settlement is whether the proposed settlement is "within the range of possible approval." Manual for Complex Litigation, Second §30.44 at 229; *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *Louie*, *supra*, at *7.  The ultimate fairness determination occurs after class members receive notice of the settlement and have an opportunity to voice their views or to exclude themselves. *See*, e.g., 3B J. Moore, Moore's Federal Practice §§23.80 - 23.85 (2003).

There is an initial presumption of fairness when a proposed settlement was negotiated at arm's length by Class Counsel. Newberg, 3d Ed., §11.41, p.11-88.  Courts generally recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight. *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988).

**B.    All Factors Support Preliminary Approval**

Courts consider several factors, none of which are independently determinative, in evaluating a settlement for purposes of preliminary approval.  If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, the court should direct that notice be given to the class members of a formal fairness hearing, where evidence may be presented in support of and in opposition to the settlement. *See* Manual of Complex Litigation, Second § 30.44, at 229.  Here, the Settlement meets all of these criteria as detailed below.

1.    Settlement is the Product of Informed, Non-collusive Negotiations

This Settlement is the result of serious, informed, non-collusive, and hard-fought negotiations before Judge Gandhi—an experienced and well-respected neutral.  The Parties engaged in extensive formal written discovery, depositions, and pre-trial motion practice prior to reaching the Settlement.  The Parties exchanged and reviewed tens of thousands of pages of documents.  Class Counsel interviewed many class members. Plaintiffs filed a detailed Motion for Class Certification, which was granted. To supplement formal discovery, the Parties met and conferred and informally exchanged additional information regarding the class before mediation. After two full days of negotiations with Judge Gandhi between 2019 and 2021, the Parties were able to reach a resolution in the few weeks before trial. (Gomez Decl. ¶ 10.)

Here, the Parties were represented by experienced and capable counsel who zealously advocated their respective positions over the

GOMEZ LAW GROUP
A PROFESSIONAL CORPORATION
2725 JEFFERSON STREET, SUITE 3
CARLSBAD, CA 92008

GOMEZ LAW GROUP
A PROFESSIONAL CORPORATION
2725 JEFFERSON STREET, SUITE 3
CARLSBAD, CA 92008

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

course of several years.  (Gomez Decl. ¶ 11.)  Accordingly, "[t]here is likewise every reason to conclude that settlement negotiations were vigorously conducted at arms' length and without any suggestion of undue influence." *In re Wash. Public Power Supply System Sec. Litig.*, 720 F. Supp. 1379, 1392 (D. Ariz. 1989).

2.    The Settlement Has No "Obvious Deficiencies" and Falls Well Within the Range for Approval

The proposed Settlement herein has no "obvious deficiencies" and is well within the range of possible approval.[5]  All Class Members will receive an opportunity to participate in the Settlement and receive payment according to the same formula.  (S.A. § III(B)(1).)

In *Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. January 27, 2007) the federal district court ruled that the settlement, which represented approximately 25 to 35% of the loss to the class, was fair, reasonable, and adequate.  *Id.*  at 28.  Similarly, this settlement is fair, adequate, and reasonable and, thus, is entitled to preliminary approval. Where both sides face significant uncertainty, the attendant risks favor settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  Here, a number of defenses asserted by Defendant present serious threats to the ultimate success of the classwide claims. (Gomez Decl. ¶ 12.)

After a thorough investigation and arm's length negotiations between experienced and informed counsel, the parties recognized the

---

[5] The strength of Plaintiffs' claims under *Dynamex*, *Borello*, and other relevant law is described more fully in their Motion for Summary Judgment. (Dkt 143.) XPO filed an Opposition (Dkt. Dkt. 171), as well as its own Motion for Summary Judgment (Dkt. 157), highlighting the risks of continued litigation.

potential risks and agreed on the settlement of Nine Million Five Hundred Thousand U.S. Dollars ($9,500,000) (the "Maximum Gross Settlement Amount").  Below is a chart of maximum damages, as set forth by Plaintiffs' damages expert, with footnotes outlining Defendant's arguments, as set forth by XPO's damages expert, which provide significant risk to Plaintiffs' claims at trial. Based on analysis of these factors, the settlement is fair, reasonable, adequate, and has no obvious deficiencies.

| Category | Amount |
|---|---|
| Total Class Members | 223 |
| Total Weeks | 17,500 |
| Total Days | 83,425 |
| Total hours worked (8hrs. per day) (03/28/14 to 06/30/21) | 667,400 |
| Hourly rate | $57.56 |
| **Unpaid Wages** | |
| Unlawful Deductions (03/28/14 to 06/30/21) | $13,019,537.49[6] |
| Waiting time (2 hrs per day) (03/28/14 to 06/30/21) | $9,604,628.53[7] |
| Failure to provide sick leave (03/28/14 to 06/30/21) | $3,833,890 |
| **Total Unpaid Wages** | **$23,137,533.83** |
| **Penalties** | |
| Willful Misclassification [LC 226.8- up to $25k per person] (03/28/16 to 06/30/21) | $5,700,000.00[8] |
| Wage Statements [LC 226.3- $250 per employee per week] (03/28/16 to 06/30/21) | $3,406,500.00 |
| Missed Meal [LC 558 - $50 for first violation | $1,352,650.00[9] |

[6] XPO filed a motion in limine in which their expert contended a fuel surcharge offset/credit applies of $5,164,999.00 up to June 30, 2021.

[7] XPO contends the Waiting Time claim suffers due to flaws of the additional claims outlined herein since it depends on winning one (or more) of those claims, which XPO disputes.

[8] XPO disputed that the willful misclassication claim was properly plead.

[9] XPO claims that its policies and practices provided meal breaks and authorized and permitted rest breaks as required by California law.  XPO

GOMEZ LAW GROUP
A PROFESSIONAL CORPORATION
2725 JEFFERSON STREET, SUITE 3
CARLSBAD, CA 92008

| | |
|---|---|
| and \$100 each week subsequent violation] (03/28/16 to 06/30/21) | |
| Missed Meal [LC 2699(f) - \$100 for first violation and \$200 each week subsequent violation] (03/28/16 to 06/30/21) | \$2,705,300.00 |
| Missed Rest [LC 558 - \$50 for first violation and \$100 each week subsequent violation] (03/28/16 to 06/30/21) | \$1,352,650.00 |
| Missed Rest [LC 2699(f) - \$100 for first violation and \$200 each week subsequent violation] (03/28/16 to 06/30/21) | \$2,705,300.00 |
| Improper Wage Statements [LC 226(e) - \$50 for first, \$100 for subsequent up to max of \$4000][10] | \$464,200.00 |
| Waiting time penalty [LC 203 – based on 30 days of work at 8 hrs per day for each driver who stopped working] | \$1,547,142.74 |
| Non-compliant meal period [LC 226.7(c) at 1 hr per day] | \$4,802,314.26 |
| Non-compliant meal period [LC 226.7(c) at 1 hr per day] | \$4,802,314.26 |
| **TOTAL PENALTIES** | **\$28,838,371.27** |

argues that the fact that employees routinely took breaks evidences that breaks were provided, authorized, and permitted. XPO further alleges that Plaintiffs' meal and rest break claims are preempted by federal law and filed a motion in limine making this argument. On January 15, 2021, the Ninth Circuit Court of Appeals upheld the Federal Motor Carrier Safety Administration's ("FMCSA") determination that federal law preempts California's meal and rest break rules. *Int'l Bhd. of Teamsters, Loc. 2785 v. Fed. Motor Carrier Safety Admin.*, 986 F.3d 841, 858 (9th Cir. 2021.) While Plaintiffs argue that Class Members are "short-haul" drivers and that preemption therefore does not apply, there is risk that XPO's arguments will undercut Plaintiffs' ability to prevail at trial. If Plaintiffs prevailed on all claims at trial, total meal and rest break damages would be approximately \$8,115,900.00 based on drivers missing an average of one meal or rest break per week.

[10] XPO contends it did not need to provide wage statements that complied with Section 226 because drivers were not employees and only employees are entitled to Section 226-compliant wage statements.

| Total Damages | $51,976,000 |
|---|---|

(Gomez Decl. at ¶ 13.)

Plaintiffs also bring claims for unfair business practices and PAGA violations. These are predicated on and derive from the underlying violations described above. Thus, the same risks inherent in the triggering claims are inherent in any derivative claims based thereon. In addition, XPO filed motions in limine to preclude references to Plaintiffs' UCL and PAGA claims based on their derivative nature. XPO has further argued in pretrial briefing that many of Plaintiffs' PAGA penalties are not valid, and in a separate motion in limine urged the Court to exclude UCL and PAGA damages altogether on procedural grounds. Moreover, with respect to civil penalties awarded for PAGA claims, the Court has virtually unlimited discretion to reduce the amount of penalties. This adds significant uncertainty to PAGA penalties. (Gomez Decl. ¶ 14.)

All told, the total Settlement results in a benefit to the Class of approximately $542 per week per Class Member, or more than $27,000.00 per year—a stellar result. Given the amount of the settlement as compared to the potential value of claims and the risks involved, the settlement is fair and reasonable. (Gomez Decl. ¶ 15.)

### 3. The Settlement Does Not Improperly Grant Preferential Treatment to Class Representatives or Segments Of The Class

The relief provided in the Settlement will benefit all members of the Class equally. The Settlement does not improperly grant preferential treatment to Plaintiffs, nor does it improperly benefit any portion of the Class. Payments to the Settlement Class are all determined according to the same methodology—each Settlement Class Member will receive an Individual Settlement Allocation that is based upon the particular

GOMEZ LAW GROUP
A PROFESSIONAL CORPORATION
2725 JEFFERSON STREET, SUITE 3
CARLSBAD, CA 92008

1   individual's length of time working for XPO during the relevant time

2   period.  (S.A. § III(B)(1).)

3       Plaintiffs will apply to the Court for a modest enhancement award

4   in consideration for their service and for the risks undertaken on behalf

5   of the class.  (S.A. § III(A)(1).)  Plaintiffs contend that they performed

6   their duties admirably by working with Class Counsel, including

7   providing information on Defendant's alleged employment practices,

8   reviewing documents with Class Counsel, participating in mediation,

9   sitting for deposition, preparing for and filing a motion for class

10  certification, preparing for trial, and referring Class Counsel to other

11  material witnesses.  The requested Enhancement Payments of $10,000

12  per Plaintiff is well within the accepted range of awards in a settlement

13  for purposes of preliminary approval.  *See e.g. Glass v. UBS Fin. Servs.*,

14  2007 WL 221862, *16-17 (N.D.Cal. Jan. 27 2007) (awarding $25,000

15  service award in overtime class action and a pool of $100,000.00 in

16  enhancements); *Louie v. Kaiser Foundation Health Plan, Inc.*, 2008 WL

17  4473183, *7 (S.D.Cal. Oct. 06, 2008) (awarding $25,000 service award

18  to each of six plaintiffs in overtime class action).  As explained in *Glass*,

19  service awards are routinely awarded to class representatives to

20  compensate the employees for the time and effort expended on the case,

21  for the risk of litigation, the fear of suing an employer and facing

22  retaliation, and to serve as an incentive to vindicate the rights of all

23  employees. *See id.* *16-17.

24      3.    The Stage Of The Proceedings Are Sufficiently Advanced

25            To Permit Preliminary Approval Of The Settlement

26      The stage of the proceedings at which this Settlement was reached

27  also weighs in favor of preliminary approval and, ultimately, final

28  approval of the Settlement.  The Settlement was not reached until 1.

**GOMEZ LAW GROUP**
A PROFESSIONAL CORPORATION
2725 JEFFERSON STREET, SUITE 3
CARLSBAD, CA 92008

significant discovery had been completed, 2. a motion for class certification was granted, and 3. the Parties were well into preparation for the trial (including each party filing Memorandums of Fact and Law and two dozen motions in limine, collectively, and exchanging and filing Exhibit and Witness Lists). Trial was scheduled to begin in less than one month. Given such a mature stage of the case, the proceedings had advanced sufficiently for the parties to assess the strengths and weaknesses of their own and each other's positions. (Gomez Decl. ¶ 16.)

Accordingly, Class Counsel has conducted a thorough investigation into the facts of the Lawsuit.  Namely, Class Counsel interviewed numerous drivers on multiple occasions, propounded multiple rounds of interrogatories, requests for admission, and requests for production of documents, conducted nearly a dozen depositions, and engaged in a thorough review and analysis of the relevant documents and data produced by Defendant with the assistance of Plaintiffs. The Parties also engaged in two separate ADR sessions during which further information was exchanged.  (Gomez Decl. ¶ 17.)

Based on the foregoing data and their own independent investigation and evaluation, Class Counsel was in an excellent position to evaluate the fairness of this settlement because an extensive investigation was conducted through both formal and informal exchanges of documents and information.  Class Counsel believes that the proposed Settlement is fair, reasonable, adequate, and in the best interest of the Class, in light of all known facts and circumstances, including the risk of delay, defenses asserted by Defendant, potential appellate issues, and myriad other risks of continued litigation.  *Id.* Defendants and Defendants' counsel also agree that the Settlement is fair and in the best interest of the Parties. (Gomez Decl. ¶ 45.)

GOMEZ LAW GROUP
A PROFESSIONAL CORPORATION
2725 JEFFERSON STREET, SUITE 3
CARLSBAD, CA 92008

GOMEZ LAW GROUP
A PROFESSIONAL CORPORATION
2725 JEFFERSON STREET, SUITE 3
CARLSBAD, CA 92008

## IV. **THE CLASS NOTICE IS APPROPRIATE**

The Court has broad discretion and authority to approve a practical notice program. In this instance, the parties have agreed upon suitable procedures by which the Class Members will be provided with written notice of the Settlement—similar to similar procedures approved and utilized in hundreds of class action settlements. (Gomez Decl. ¶ 18.)

This notice program, as detailed above and in the Settlement Agreement, was designed to meaningfully reach the largest possible number of potential Class Members and advises them of all pertinent information concerning the Settlement. The mailing and distribution of the Notice satisfies the requirements of due process, is the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons entitled thereto.  The proposed Notice is accurate and informative.  The Notice satisfies the content requirements for notice following the exemplar class notice in the Manual for Complex Litigation, Second § 41.43.  The Notice also fulfills the requirement that Class notices be neutral.  Newberg, at § 8.39. (Gomez Decl. ¶ 19.)

## V. **CONCLUSION**

The Plaintiffs respectfully request that the Court preliminarily approve the proposed settlement, enter the proposed Preliminary Approval Order submitted herewith, and set a date for the final approval hearing.

Dated: August 19, 2021           **GOMEZ LAW GROUP**

/s/ Alvin M. Gomez
Alvin M. Gomez, Esq.
Stephen Noel Ilg, Esq.
Frank J. Zeccola, Esq.
Attorneys for Plaintiffs
and the Plaintiff Class